IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 23-cv-02785-PAB-STV

PMW, LLC,

      Plaintiff,

v.

ANKC SAN FRANCISCO, LLC,
ANDREW MILKS, and
SEAN WARD,

      Defendants.

_____

**ORDER**
_____

The matters before the Court are the Motion for Default Judgment Against Defendant ANKC San Fransisco LLC [Docket No. 45], Motion for Default Judgment Against Defendant Andrew Milks [Docket No. 46], and Motion for Default Judgment Against Defendant Sean Ward [Docket No. 47].

I.    **BACKGROUND**

    A.  **Factual Allegations**[1]

Plaintiff PMW, LLC ("PMW") is a Colorado limited liability company whose address is 3575 Ringsby Court, Unit 404, Denver, CO 80216.  Docket No. 8 at 1, ¶ 1.  Defendant ANKC San Francisco LLC ("ANKC") is a California limited liability company

_____

[1] Because of the Clerk of Court's entries of default against the defendants, *see* Docket Nos. 42, 43, 44, the well-pled allegations in plaintiff's amended complaint, Docket No. 8, are deemed admitted.  *See Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003).

whose address is 6680 Lockheed Dr., Ste 101, Redding, CA 96002.  *Id.*, ¶ 2.

Defendant Andrew Milks is an individual and resident of California whose address is

69846 Bluegrass Way, Cathedral City, CA 92234.  *Id.*, ¶ 3.  Defendant Sean Ward is an

individual and resident of California whose address is 10338 Bosque Drive, Lakeside,

CA 92040.  *Id.*, ¶ 4.  The borrowers[2] entered contracts in Colorado and purposefully

directed activities at Colorado.  *Id.* at 2, ¶ 7.  The borrowers agreed in writing to a forum

for this action in Colorado.  *Id.*

On or about September 1, 2022, ANKC executed and delivered to PMW a

promissory note in the original principal amount of $162,989.79.  *Id.*, ¶ 10.  The note

evidences a loan for business purposes and not primarily for personal, family, or

household use.  *Id.*, ¶ 11.  The note is in default due to ANKC's failure or refusal to pay

amounts due under the note.  *Id.*, ¶ 12.  As of September 15, 2023, the note's unpaid

balance was $165,566.37.[3]  *Id.* at 3, ¶ 14.  The note continues to accrue interest after

September 15, 2023, at the default rate of 23.5% per annum and the current default per

diem is $100.36.  *Id.*  Late fees on the note continue to accrue at $321.58 per month.

*Id.*  PMW is the current holder of the note.  *Id.*, ¶ 16.

---

[2] The amended complaint sometimes refers to defendants ANKC LLC, Andrew Milks, and Sean Ward collectively as "the Borrowers."  Docket No. 8 at 1, ¶ 5.  The Court adopts the same nomenclature for purposes of this order.

[3] As discussed later, because these allegations concern the amount of damages, the Court does not accept these allegations as true without support.  *First Home Bank v. USA Pro Roofing & Constr., LLC*, No. 18-cv-00965-MSK-STV, 2018 WL 6990394, at *3 (D. Colo. Oct. 19, 2018) ("While the Court accepts the well-pleaded facts of the complaint as true on a motion for default judgment, allegations relating to the amount of damages are generally not accepted as true.")

On or about September 1, 2022, ANKC entered into a loan agreement with PMW. *Id.*, ¶ 19. PMW has performed its obligations under the loan agreement. *Id.* at 4, ¶ 21. ANKC has failed or refused to perform its obligations under the loan agreement because the agreement states that a default under the note constitutes a default under the loan agreement. *Id.*, ¶ 22. ANKC's breach of the loan agreement has damaged PMW in the amounts owed under the note. *Id.*, ¶ 23.

To secure the note, ANKC executed and delivered to PMW a security agreement dated September 1, 2022, *Id.*, ¶ 26. Pursuant to the security agreement, each party signing the security agreement agreed to the following choice of governing law:

> This Agreement and the Loan Agreement and any claim, controversy, dispute or cause of action (whether in contract or tort or otherwise) based upon, arising out of or relating to this Agreement or the Loan Agreement (except, as to the Loan Agreement, as expressly set forth therein) and the transactions contemplated hereby and thereby shall be governed by, and construed in accordance with the laws of the State of Colorado.

*Id.* at 4–5, ¶ 27. Under the security agreement, PMW has a security interest in the collateral identified in the following provision:

> The Grantor hereby pledges and grants to the Secured Party, and hereby creates a continuing First Priority lien and security interest in favor of the Secured Party in and to all of its right, title and interest in and to the following, wherever located, whether now existing or hereafter from time to time arising or acquired (collectively, the "Collateral"):
>
>> (a) all fixtures and personal property of every kind and nature including all accounts (including health-care-insurance receivables), goods (including inventory and equipment), documents (including, if applicable, electronic documents), instruments, promissory notes, chattel paper (whether tangible or electronic), letters of credit, letter-of credit rights (whether or not the letter of credit is evidenced by a writing), securities and all other investment property, general intangibles (including all payment intangibles), intellectual property, money, deposit accounts, and any other contract rights or rights to the payment of money; and (b) all Proceeds and products of each of the foregoing, all books and records relating to the foregoing, all supporting obligations related thereto, and all accessions to,

substitutions and replacements for, and rents, profits and products of, each of the foregoing, and any and all Proceeds of any insurance, indemnity, warranty or guaranty payable to the Grantor from time to time with respect to any of the foregoing.

*Id.* at 5, ¶ 28.  PMW's security interest in the collateral was properly perfected by the filing of the financing statement UCC FINANCING STATEMENT, File No. U220225652023, filed with the State of California, Office of the Secretary of State, on September 9, 2022.  *Id.*, ¶ 29.  The security agreement is in default by virtue of the default under the note. *Id.* at 6, ¶ 30.  The collateral has not been taken by any party in this action for a tax assessment or fine pursuant to a statute or seized under an execution against property of PMW.  *Id.* at 7, ¶ 37.

To secure the note, Mr. Milks executed and delivered to PMW a guaranty agreement dated September 1, 2022.  *Id.*, ¶ 42.  PMW accepted Mr. Milks' guaranty, relied upon the guaranty, and, in consideration for Mr. Milks' guaranty, PMW allowed ANKC to obtain credit.  *Id.* at 8, ¶ 43.  All conditions precedent for the maintenance of this action on Mr. Milks' guaranty have been performed, satisfied, or waived.  *Id.*, ¶ 44. Mr. Milks unconditionally guaranteed the repayment of ANKC's debts to PMW, plus all of PMW's costs and expenses, including PMW's attorneys' fees and legal expenses, incurred in connection with the enforcement of the guaranty.  *Id.*, ¶ 45.

To secure the note, Mr. Ward executed and delivered to PMW a guaranty agreement dated September 1, 2022.  *Id.*, ¶ 49.  PMW accepted Mr. Ward's guaranty, relied upon the guaranty, and, in consideration for Mr. Ward's guaranty, PMW allowed ANKC to obtain credit.  *Id.*, ¶ 50.  All conditions precedent for the maintenance of this action on Mr. Ward's guaranty have been performed, satisfied, or waived.  *Id.* at 9, ¶ 51. Mr. Ward unconditionally guaranteed the repayment of ANKC's debts to PMW, plus all

of PMW's costs and expenses, including PMW's attorneys' fees and legal expenses, incurred in connection with the enforcement of the guaranty.  *Id.*, ¶ 52.

      B.  <u>Procedural History</u>

      PMW filed this lawsuit on October 24, 2023.  Docket No. 1.  On October 26, 2023, PMW filed an amended complaint.  Docket No. 8.  PMW asserts three claims against ANKC: breach of the note, breach of the loan agreement, and replevin for breach of the security agreement.  *Id.* at 2–7, ¶¶ 9–40.  PMW also asserts claims against Mr. Milks and Mr. Ward for breach of their guaranties.  *Id.*, 7–9, ¶¶ 41–54.

      On November 6, 2023, the Court ordered PMW to show cause why the Court should not dismiss the case for lack of subject matter jurisdiction as to PMW's claims against Mr. Milks and Mr. Ward based on PMW's failure to adequately allege their citizenships.  Docket No. 13.  PMW responded, Docket No. 14, and filed a declaration by Michael Furlong, PMW's Credit Director, that adequately demonstrated that Mr. Milks and Mr. Ward live in California, that each intends to remain in California, and that Mr. Milks and Mr. Ward are therefore citizens of California.  Docket No. 14-1 at 2–4, ¶¶ 5–7.

      On November 28, 2023, PMW filed a motion for the Court to enter a stipulated order of possession and asked the Court to order that the collateral be transferred to PMW under the terms of the security agreement.  Docket No. 24.  PMW attached an affidavit by Mr. Milks, acting in his role as Chief Executive Officer for ANKC, attesting to the fact that "ANKC will stipulate to the entry of a Stipulated Order of Possession."  Docket No. 24-1 at 1, ¶ 3.  On December 1, 2023, pursuant to Federal Rule of Civil Procedure 65 and Colorado Rule of Civil Procedure Rule 104(g), the Court determined that PMW had demonstrated with reasonable probability that PMW is entitled to

possession of the collateral and ordered ANKC to deliver the collateral to PMW.  Docket No. 31 at 2–3.

On February 1, 2024, the Clerk of the Court entered default against ANKC, Mr. Milks, and Mr. Ward.  Docket Nos. 42, 43, 44.  On February 9, 2024, PMW filed the present motions for default judgment.  Docket Nos. 45, 46, 47.

## II.   LEGAL STANDARD

In order to obtain a judgment by default, a party must follow the two-step process described in Fed. R. Civ. P. 55.  First, the party must seek an entry of default from the Clerk of the Court under Rule 55(a).  Second, after default has been entered by the Clerk, the party must seek judgment under the strictures of Rule 55(b).  *See Williams v. Smithson*, 57 F.3d 1081, 1995 WL 365988, at *1 (10th Cir. June 20, 1995) (unpublished table decision) (citing *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981)).

The decision to enter default judgment is "committed to the district court's sound discretion."  *Olcott*, 327 F.3d at 1124 (citation omitted).  In exercising that discretion, the Court considers that "[s]trong policies favor resolution of disputes on their merits."  *In re Rains*, 946 F.2d 731, 732 (10th Cir. 1991) (quotation and citations omitted).  "The default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party."  *Id.*  It serves to protect a plaintiff against "interminable delay and continued uncertainty as to his rights."  *Id.* at 733.  When "ruling on a motion for default judgment, the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment."  *Seme v. E&H Prof'l Sec. Co., Inc.*, No. 08-cv-01569-RPM-KMT, 2010 WL 1553786, at *11 (D. Colo. Mar. 19, 2010).

A party may not simply sit out the litigation without consequence. *See Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444-45 (10th Cir. 1983) (citations omitted) ("a workable system of justice requires that litigants not be free to appear at their pleasure.  We therefore must hold parties and their attorneys to a reasonably high standard of diligence in observing the courts' rules of procedure.  The threat of judgment by default serves as an incentive to meet this standard.").  One such consequence is that, upon the entry of default against a defendant, the well-pleaded allegations in the complaint are deemed admitted. *See* 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2688.1 (4th ed., 2023 rev.).  "Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Id.*  A court need not accept conclusory allegations. *Moffett v. Halliburton Energy Servs., Inc.,* 291 F.3d 1227, 1232 (10th Cir. 2002).  Although "[s]pecific facts are not necessary" in order to state a claim, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), the well-pleaded facts must "permit the court to infer more than the mere possibility of misconduct."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted).  Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (quotation and citation omitted).

III.   **ANALYSIS**

A.   **Jurisdiction**

Before addressing the merits of plaintiff's motion for default judgment, the Court

must determine whether it has subject matter jurisdiction over the case and personal

jurisdiction over ANKC, Mr. Milks, and Mr. Ward.   *See Dennis Garberg & Assocs., Inc.*

*v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 772 (10th Cir. 1997) (holding that "a district court

must determine whether it has jurisdiction over the defendant before entering judgment

by default against a party who has not appeared in the case").

### *1.   Subject Matter Jurisdiction*

The Court has subject matter jurisdiction over PMW's claims pursuant to 28

U.S.C. § 1332.  In its amended corporate disclosure statement, PMW identified that its

members have the following citizenship: Colorado, New Jersey, Illinois, Utah, Nevada,

and Indiana.  *See* Docket No. 15 at 1–3, ¶ 2.a–k.  As such, PMW has the citizenship of

each of these states.  *See Siloam Springs Hotel, LLC v. Century Sur. Co.*, 781 F.3d

1233, 1237–38 (10th Cir. 2015) ("in determining the citizenship of an unincorporated

association for purposes of diversity, federal courts must include all the entities'

members").  PMW has shown that Mr. Milks and Mr. Ward are California citizens.

Docket No. 14-1 at 2–4, ¶¶ 5–7.  PMW has also shown that Mr. Milks and Mr. Ward are

the sole members of ANKC, and that, therefore, ANKC is a citizen of California.  *Id.* at

2–4, ¶¶ 5–6.  PMW seeks $165,566.37, plus costs and interest, in damages for its

claims, *see* Docket No. 8 at 4, ¶ 24, which is more than the $75,000 jurisdictional

amount.  28 U.S.C. § 1332(a)(1) ("district courts shall have original jurisdiction of all civil

actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States.").

### 2. Personal Jurisdiction

Plaintiff bears the burden of establishing personal jurisdiction. *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988); *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 839 (10th Cir. 2020). Plaintiff can satisfy its burden by making a *prima facie* showing. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). A court will accept the well-pled allegations of the complaint as true in determining whether plaintiff has made a *prima facie* showing that personal jurisdiction exists. *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008). If the presence or absence of personal jurisdiction can be established by reference to the complaint, the court need not look further. *Id.* The plaintiff, however, may also make this *prima facie* showing by putting forth evidence that, if proven to be true, would support jurisdiction over the defendant. *Id.*

"In determining whether a federal court has personal jurisdiction over a defendant, the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (quoting *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000)). The Colorado long-arm statute, Colo. Rev. Stat. § 13-1-124, has been construed to extend jurisdiction to the full extent permitted by the Constitution, so the jurisdictional analysis here reduces to a single inquiry of whether jurisdiction offends due process. *See Dudnikov*, 514 F.3d at 1070; *Archangel Diamond*

*Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005).  Personal jurisdiction comports with due process where a defendant has minimum contacts with the forum state and where those contacts are such that assuming jurisdiction does not offend "traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  Minimum contacts may be established under the doctrines of general jurisdiction or specific jurisdiction.  *Howarth v. TCER, LLC*, 20-cv-03230-PAB-KMT, 2021 WL 4775270, at *2 (D. Colo. Oct. 13, 2021).

Furthermore, proper service is a jurisdictional prerequisite to litigation.  *Jenkins v. City of Topeka*, 136 F.3d 1274, 1275 (10th Cir. 1998) ("Effectuation of service is a precondition to suit.").  Without proper service, the Court lacks personal jurisdiction over a defendant.  *Okla. Radio Assocs. v. Fed. Deposit Ins. Corp.*, 969 F.2d 940, 943 (10th Cir. 1992).

### a.  Service of Process

The Court first considers whether PMW properly served defendants.  The Federal Rules of Civil Procedure provide that a corporation, partnership, or unincorporated association can be served "(A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process."  Fed. R. Civ. P. 4(h)(1).  Courts have applied Rule 4(h) to limited liability companies.  *See Warming Trends, LLC v. Flame DesignZ, LLC*, No. 22-cv-00252-PAB-STV, 2023 WL 196288, at *3 (D. Colo. Jan. 17, 2023) (collecting cases).

PMW has filed two proof of service documents regarding ANKC.  Docket Nos. 17, 19.  The first states that private process server Michael Morris served Coriann Crosthwaite, who is authorized to accept service for Rocket Corporate Services, Inc., "Agent for Service," on November 20, 2023.  Docket No. 17 at 1.  The second states that Mr. Morris also served Ms. Crosthwaite on November 17, 2023.  Docket No. 19 at 1.  PMW states that Ms. Crosthwaite is authorized to accept service under Fed. R. of Civ. P. 4.[4]  Docket No. 45 at 2, ¶ 6.

PMW has filed two proof of service documents regarding Mr. Milks.  Docket Nos. 20, 23.  The first states that private process server Michael Morris personally served Mr. Milks on November 19, 2023.  Docket No. 20 at 1.  The second states that private process server Lindsey Warn served Mr. Milks on November 19, 2023.  Docket No. 23 at 1.  Fed. R. Civ. P. 4(e)(2) provides that an individual can be served by "delivering a copy of the summons and of the complaint to the individual personally."  Fed. R. Civ. P. 4(e)(2)(A).  The Court finds that Mr. Milks' service was proper.

Finally, PMW has filed three proof of service documents for Sean Ward.  Docket Nos. 18, 22, 36.  The first states that private process server Gregory Durrant served Janis Ward with a copy of the summons and complaint on November 18, 2023 at the

---

[4] The Court takes judicial notice of the fact that, although the California Secretary of State's website currently does not list an agent for service of process for ANKC, California state records show that Rocket Corporate Services, Inc. was authorized to accept service for ANKC until its resignation on November 21, 2023.  *See* California Secretary of State, *Business Search,* https://bizfileonline.sos.ca.gov/search/business. The Court finds that service was proper under Fed. R. Civ. P. 4(h)(1)(B).  *See Avus Designs, Inc. v. Grezxx, LLC,* 644 F. Supp. 3d 963, 973 (D. Wyo. 2022) (holding that service of process was proper under Rule 4(h) where plaintiff served the defendant LLC's registered agent).

address of 10338 Bosque Drive, Lakeside, CA 92040.  Docket No. 18 at 1.  The proof of service states that Janis Ward is Mr. Ward's mother and is in her seventies.  *Id.*  The second proof of service states the same facts.  *See* Docket No. 22.  The third proof of service attests to the same facts and identifies Ms. Ward's relationship to Mr. Ward as "Mother/Co-Occupant."  Docket No. 36 at 1.  The third proof of service also states that on November 18, 2023 private process server Eunice Fortanel served Mr. Ward by mailing Mr. Ward a copy of the summons and complaint by first class mail to the Bosque Drive address.  *Id.* at 4.  Rule 4(e)(2) provides an individual can be served by "leaving a copy of [the summons and complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there."  Fed. R. Civ. P. 4(e)(2)(B).  The proof of service attests that a copy of the summons and complaint was left at Mr. Ward's address with his mother, who is of suitable age and discretion and who is a "Co-Occupant."  The Court therefore finds that service was proper.

Furthermore, Rule 4 provides that "an individual . . . may be served in a judicial district of the United States by: . .  following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."  Fed. R. Civ. P. 4(e)(1).  Under Colorado Rule of Civil Procedure 4(e) a person may be served "by leaving a copy [of the summons and complaint] at the person's usual place of abode, with any person whose age is eighteen years or older and who is a member of the person's family."  Colo. R. Civ. P. 4(e)(1).  The Colorado rule omits the requirement that the person accepting service also live at the usual abode of the person to be served, so long as the person accepting service is a

family member over eighteen years old.  Each of PMW's notices of service states that service was attempted at Mr. Ward's Bosque Drive address, that Ms. Ward is Mr. Ward's mother, and that Ms. Ward appears to be in her seventies.  *See* Docket No. 18 at 1.  For these additional reasons, the Court finds that Mr. Ward's service was proper.

### b.  General Jurisdiction

General jurisdiction extends to "any and all claims" brought against a defendant, including claims that have no relation to the forum state.  *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (citation omitted).  A court may exercise general jurisdiction only when a defendant is "essentially at home" in the state.  *Id*.  For corporations, "the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'"  *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (citation omitted); *see also Ford Motor Co.*, 141 S. Ct. at 1024.  "Courts have held that *Daimler* applies with equal force to limited liability companies."  *Bliss v. Change Healthcare Operations LLC*, 2021 WL 706770, at *1 (W.D. Okla. Feb. 23, 2021) (collecting cases).

PMW states that ANKC "is a California limited liability company whose address is 6680 Lockheed Dr., Ste 101, Redding, CA 96002."  Docket No. 8 at 1, ¶ 2.  The Court has found that Mr. Milks and Mr. Ward are citizens of California.   PMW makes no argument that the defendants are otherwise "at home" in Colorado.  Accordingly, the Court finds that the defendants are not subject to general jurisdiction in Colorado.

### c.  Specific Jurisdiction

Specific jurisdiction is present if the lawsuit "aris[es] out of or relat[es] to the defendant's contacts with the forum."  *Bristol-Myers Squibb Co. v. Sup. Ct. of Cal.*, 582

U.S. 255, 262 (2017).  That is, a "plaintiff's injury must 'arise out of or relate to' the defendant's forum contacts."  *Compañía de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1269, 1284 (10th Cir. 2020) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985)).  In other words, "there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'"  *Bristol-Myers*, 582 U.S. at 262 (quoting *Goodyear Dunlop Tires Operations, S. A. v. Brown*, 564 U.S. 915, 919 (2011)).

The specific jurisdiction analysis is two-fold.  First, a court must determine whether a defendant has such minimum contacts with Colorado that the defendant "should reasonably anticipate being haled into court" here.  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  Within this inquiry, the court must determine whether the defendant purposefully directed its activities at residents of the forum, *Burger King*, 471 U.S. at 472, and whether plaintiff's claim arises out of or results from "actions by . . . defendant . . . that create a substantial connection with the forum State."  *Asahi Metal Indus. Co. v. Sup. Ct. of Cal.*, 480 U.S. 102, 109 (1987) (internal quotations omitted).  "The contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'"  *Ford Motor Co.*, 141 S. Ct. at 1025 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)).  "They must show that the defendant deliberately 'reached out beyond' its home – by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there."  *Id.* (citation omitted).  Second, if a defendant's actions create sufficient minimum contacts, the court must consider whether the exercise of personal jurisdiction over the defendant offends

"traditional notions of fair play and substantial justice." *Asahi*, 480 U.S. at 105.  The court considers several factors as part of this analysis, including: (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the states in furthering fundamental substantive social policies. *Burger King*, 471 U.S. at 477.

The Court finds that defendants have sufficient minimum contacts with Colorado to support personal jurisdiction over them in this dispute.  A "contract between an out-of-state party and a resident of the forum state cannot, standing alone, establish sufficient minimum contacts with the forum." *Benton v. Cameco Corp.*, 375 F.3d 1070, 1077 (10th Cir. 2004) (citing *Burger King*, 471 U.S. at 473).  Rather "[i]n a contract case, relevant factors for assessing minimum contacts include prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id.* (quotation and citation omitted).  "That is, the contract relied upon to establish minimum contacts must have a 'substantial connection' with the forum state." *TH Agric. & Nutrition, LLC v. Ace Eur. Grp. Ltd.*, 488 F.3d 1282, 1288 (10th Cir. 2007) (quoting *McGee v. Int'l Life Ins. Co.,* 355 U.S. 220, 223 (1957)).  Here, each defendant entered into a contract in Colorado.  Docket No. 8 at 2, ¶ 7.  ANKC entered into a loan agreement and a security agreement in Colorado, as well as executed a promissory note in Colorado. *Id.* at 2–4, ¶¶ 10, 19, 26.  Mr. Milks and Mr. Ward entered into contracts guaranteeing the loan to ANKC in Colorado. *Id.* at 7–8, ¶¶ 42, 49.  Although PMW provides no details as to the parties' prior negotiations and

course of conduct, the terms of the contracts in dispute and the contemplated future consequences of failures to perform these contracts establish minimum contacts with Colorado.

Each of these contracts declares that it shall be governed by the law of the state of Colorado. *Id.* at 2, ¶ 7; *see also* Docket No. 8-1 at 3; Docket No. 8-2 at 15; Docket No. 8-3 at 2, 10; Docket No. 8-5 at 3; Docket No. 8-6 at 3. Furthermore, the note states that "venue to enforce this Note shall lie exclusively in Denver, Colorado." Docket No. 8-1 at 3. Similarly, the loan agreement provides that ANKC "agrees that any legal suit, action or proceeding arising out of or relating to this Loan Agreement may be instituted in a state or federal court of appropriate subject matter jurisdiction in the Governing State; waives any objection which it may have now or hereafter to the venue of any suit, action or proceeding; and irrevocably submits to the jurisdiction of any such court in any such suit, action or proceeding." Docket No. 8-2 at 14, ¶ 8.7. The loan agreement defines Governing State as the state of Colorado. *Id.* at 1. The Milks and Ward guaranties contain similar language, namely, that Mr. Milks and Mr. Ward each "irrevocably submits to the jurisdiction" of "a state or federal court of appropriate subject matter jurisdiction in the State of Colorado." Docket No. 8-5 at 3; Docket No. 8-6 at 3.

Other federal courts have found contractual language agreeing to submit disputes to a particular forum dispositive of the issue of personal jurisdiction. *See Rescuecom Corp. v. Chumley*, 522 F. Supp. 2d 429, 443 (N.D.N.Y. 2007) ("such conferrals of exclusive jurisdiction have been specifically recognized as including *consents to personal jurisdiction*.") (collecting cases); *Suntrust Bank v. G.R. Auto Supply, Inc.*, 2007 WL 2226058, at *1 (N.D. Ga. July 30, 2007) ("The Court further finds

16

that the parties consented to personal jurisdiction in this court by agreeing in the loan contract to have all disputes heard in Georgia.").

Even if the forum selection clauses are not determinative of whether the Court has personal jurisdiction over the defendants, each of these contracts contemplates a continuing relationship with Colorado through ongoing obligations to a Colorado resident. *See* Docket No. 8-2 at 15 ("The term of this Loan Agreement shall commence with the date hereof and end on the date when, after written notice from either party to the other that no further loans are to be made hereunder, Borrower pays in full the Loan and all other obligations of Borrower to Lender which are secured hereby, and Lender has no further obligations of any type to Borrower."); *Burger King Corp.*, 471 U.S. at 480 (by entering into a contractual relationship that envisioned "continuing and wide-reaching contacts" with the plaintiffs in the forum state, defendant's relationship to the forum "can in no sense be viewed as 'random,' 'fortuitous,' or 'attenuated.'" (citation omitted)). By entering into contracts governed by Colorado law, defendants here have "purposefully availed [themselves] of the benefits and protections of [Colorado's] laws." *Id.* at 482. Moreover, by agreeing to a schedule of payments that would continue into February 2025, the defendants necessarily understood that they were creating ongoing obligations in the forum state. *See Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (citing *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 647 (1950)) ("[B]y asking Mellon to lend money and offering to guaranty that debt, the defendants deliberately reached out beyond one state and created continuing relationships and obligations with citizens of another state. Mellon initially granted the three loans between August 1987 and November 1988 with payments to continue

through November 1989. . . .  During this time, the defendants remained liable as guarantors and sureties if the principal obligor ever failed to pay.  The actions of the defendants, therefore, knowingly created continuing obligations with a citizen of Pennsylvania." (quotation and alterations omitted)).  Finally, by agreeing to jurisdiction in Colorado, defendants contemplated a future consequence of being brought to court in Colorado if they failed to perform their obligations under the contract.  *Benton*, 375 F.3d at 1077.  Considering these contacts as a whole, the Court finds that the defendants have sufficient minimum contacts through their ongoing contractual relationships with PMW to support personal jurisdiction over each of them.

Regarding traditional notions of fair play and substantial justice, the Court finds that, under the relevant factors, personal jurisdiction over defendants does not offend traditional notions of fair play and substantial justice.  First, "it is only in highly unusual cases that inconvenience will rise to a level of constitutional concern."  *Peay*, 205 F.3d at 1212–13 (citation and quotations omitted).  The Court does not find this to be a case where the burden on defendants rises to a constitutional concern.  Second, "[s]tates have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors."  *OMI Holdings, Inc. v. Royal Ins. Co. of Canada,* 149 F.3d 1086, 1096 (10th Cir. 1998).  The third factor "hinges on whether the [p]laintiff may receive convenient and effective relief in another forum," *Benton,* 375 F.3d at 1079 (citation omitted), and the fourth factor asks "whether the forum state is the most efficient place to litigate the dispute."  *Id.* at 1080 (citation omitted).  In this case, given the forum selection clauses in the disputed contracts, it is unclear whether PMW could receive effective relief in another state.  Regardless, the Court finds that Colorado

is the most efficient forum to litigate this dispute because PMW is a citizen of Colorado, the alleged injury was directed at PMW in Colorado, and defendants are out-of-state and have not responded to the complaint or motion for default judgment.  The fifth factor "focuses on whether the exercise of personal jurisdiction by [the forum] affects the substantive social policy interests of other states or foreign nations."  *Id.* (citation omitted).  Each of the contracts states that it is governed by Colorado law.  *See* Docket No. 8-1 at 3; Docket No. 8-2 at 15; Docket No. 8-3 at 2, 10; Docket No. 8-5 at 3; Docket No. 8-6 at 3.  Accordingly, the Court finds that exercising personal jurisdiction over defendants does not offend traditional notions of fair play and substantial justice, and that the Court has specific personal jurisdiction over each of them.

## B. <u>Breach of Contract</u>

### 1. *Elements of Breach of Contract*

PMW brings five claims for breach of contract.  *See* Docket No. 8 at 2–9, ¶¶ 9–54.  These include breach of contract claims for ANKC's failure to perform under the note, the loan agreement, and the security agreement, and for Mr. Milks' and Mr. Ward's failure to satisfy their obligations under the terms of their guaranties.  *Id.*  Under Colorado law, "a party attempting to recover on a claim for breach of contract must prove the following elements: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff."  *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (citations omitted); *Arrow Enter. Computing Sols., Inc. v. Right PriceIT, LLC*, No. 22-cv-01562-NYW-STV, 2023 WL 4178026, at *8 (D. Colo. June 26, 2023) (applying the elements of breach of contract in default judgment

for claims based on a security agreement); *Marquardt v. Perry*, 200 P.3d 1126, 1133 (Colo. App. 2008) (applying elements of breach of contract to a breach of guaranty dispute).

## 2. *Breach of the Promissory Note*

PMW alleges that, on or about September 1, 2022, ANKC executed and delivered to PMW a promissory note in the original principal amount of $162,989.79. Docket No. 8 at 2, ¶ 10. PMW further alleges that the note is in default due to ANKC's failure or refusal to pay amounts due under the note and that, as of September 15, 2023, the note's unpaid balance was $165,566.37. *Id.* at 2–3, ¶¶ 12–14. PMW asserts that it is the current holder of the note and that "all conditions precedent for the maintenance of this action have been performed, satisfied, or waived." *Id.* at 3, ¶ 16. Given that PMW's performance under the contract is a condition precedent to bringing this action, the well-pled allegations of the complaint establish the existence of the promissory note contract, performance on the contract by PMW, failure to perform on the contract by ANKC, and damages to PMW. Accordingly, PMW states a claim for breach of the promissory note contract and is entitled to default judgment on this claim.

## 3. *Breach of the Loan Agreement*

PMW's complaint states that, on September 1, 2022, ANKC entered into a loan agreement with PMW. *Id.*, ¶ 19. PMW alleges that it has performed its obligations under the loan agreement. *Id.* at 4, ¶ 21. PMW claims that ANKC has failed to perform its obligations under the loan agreement because the agreement states that a default under the note constitutes a default under the loan agreement. *Id.*, ¶ 22. PMW alleges damages under the loan agreement in the amounts owed under the note. *Id.*, ¶ 23. As

discussed in the previous section, PMW has adequately alleged a breach of the note. As such, the well-pled allegations of the complaint establish the existence of the loan agreement, performance on the contract by PMW, failure to perform on the contract by ANKC, and damages to PMW. Accordingly, PMW states a claim for breach of the loan agreement and is entitled to default judgment on this claim.

### 4. Breach of the Security Agreement

PMW alleges that ANKC executed a security agreement with PMW on September 1, 2022, *Id.*, ¶ 26. PMW states that, pursuant to the security agreement, PMW has a security interest in certain collateral. *Id.* at 5, ¶ 28. PMW claims that its security interest in the collateral was perfected by the filing of a financing statement with the California Secretary of State. *Id.*, ¶ 29. PMW alleges that the security agreement is in default by the default under the note. *Id.* at 6, ¶ 30. PMW claims that the collateral has not been taken by any party in this action for a tax assessment or fine under a statute, or seized under an execution against the property of PMW. *Id.* at 7, ¶ 37.

On December 1, 2023, the Court entered a stipulated order for possession and directed ANKC to deliver to PMW the collateral covered by the security agreement. Docket No. 31 at 3. This order was made pursuant to Colorado Rule of Civil Procedure 104. *Id.* PMW's possession is not final; instead, if "the defendant claims a return" of the possessed property, "judgment for the defendant may be for a return of the property, or the value thereof in case a return cannot be had, and damages for taking and withholding the same." Colo. R. Civ. P. 104(p). PMW argues that the stipulated order for possession "should be a final order and final judgment of the Court." Docket No. 45 at 5, ¶ 29. Given that the Court's order for possession is not final, PMW has shown

damages based on ANKC's failure to pay under the note and the fact that PMW does not currently have full rights of possession in the collateral.

The well-pled allegations of the complaint establish the existence of the security agreement, performance on the contract by PMW, failure to perform on the contract by ANKC based on its failure to perform under the note, and damages to PMW. Accordingly, PMW states a claim for breach of the security agreement and is entitled to default judgment on this claim.

### 5.  *Breach of the Guaranties*

PMW brings claims for breach of guaranty against Mr. Milks and Mr. Ward. Docket No. 8 at 7–9, ¶¶ 41–54.  PMW alleges that, to secure the note, Mr. Milks executed and delivered to PMW a guaranty agreement dated September 1, 2022.  *Id.* at 7, ¶ 42.  PMW asserts that it accepted the guaranty, and, in consideration for Mr. Milks' guaranty, PMW allowed ANKC to obtain credit.  *Id.* at 8, ¶ 43.  PMW claims that all conditions precedent for the maintenance of this action on Mr. Milks' guaranty have been performed, satisfied, or waived.  *Id.*, ¶ 44.  PMW alleges that Mr. Milks unconditionally guaranteed the repayment of ANKC's debts to PMW, plus all of PMW's costs and expenses, including PMW's attorneys' fees and legal expenses, incurred in connection with the enforcement of the guaranty.  *Id.*, ¶ 45.  As a result of ANKC's default on its obligations to PMW under the note, and pursuant to the terms of Mr. Milks' guaranty, PMW claims that Mr. Milks is jointly and severally liable with ANKC to PMW for the unpaid balance due to PMW under the note.  *Id.*, ¶ 47.  PMW makes identical allegations regarding the guaranty executed by Mr. Ward.  Id. at 8–9, ¶¶ 49–54.

The well-pled allegations of the complaint establish the existence of Mr. Milks' guaranty and Mr. Ward's guaranty, performance by PMW, ANKC's failure to perform under the note, and damages to PMW based on ANKC's failure to perform under the note.  However, PMW's complaint makes no allegations regarding Mr. Milks' or Mr. Ward's failure to perform under the guaranty agreements.  The allegations in the complaint permit the Court only to infer "the mere possibility of misconduct."  *Ashcroft*, 556 U.S. at 679.  Given that Mr. Milks' and Mr. Ward's non-performance is a necessary element for PMW's claims, the Court finds that PMW has failed to state claims for breach of the guaranty agreements and is not entitled to default judgment on these claims.

### C.  Relief

PMW seeks the same relief for ANKC's breach of the note and breach of the loan agreement.  Docket No. 45 at 4–5, ¶¶ 23, 27.  Specifically, PMW states that it "is entitled to a judgment in its favor and against ANKC for the unpaid balance of the Note in the amount of $165,566.37, plus interest thereon at the default rate of 23.5% per annum ($100.36 per day) commencing on September 16, 2023, plus late fees accruing at $321.58 per month commencing on September 16, 2023."  *Id.*  The complaint alleges that this total represents the sum of the unpaid principal ($153,742.32),[5] the accrued

---

[5] This figure appears on the Amortization Schedule for the note under May 2023. Docket No. 8-1 at 5.  Although this suggests that defendants made the first eight monthly payments on the note, there are no well-pled allegations regarding what payments defendants made.  *See* Docket No. 8.  Because the Court is not required to accept as true plaintiff's conclusory allegations regarding its damages calculation, *First Home Bank*, 2018 WL 6990394, at *3, because plaintiff fails to allege facts relevant to the Court's determination of damages and because plaintiff fails to support its damage calculation with evidence, the Court will deny plaintiff's motions for default judgment.

interest through September 15, 2023 ($10,537.75), and the accrued late fees through September 15, 2023 ($1,286.30). Docket 8 at 3, ¶ 14. The allegations in the complaint are verified by Dennis O'Carroll, PMW's Chief Executive Officer. *Id.* at 11. To support its claimed damages, PMW attaches copies of the loan agreement and the note. Docket Nos. 45-3, 45-4. The note states that on September 1, 2022, ANKC borrowed $162,989.79 and includes an amortization schedule to repay the note by August 2025. Docket No. 45-3 at 5–6.

"In addition to finding that Plaintiff has a basis for relief, default judgment cannot be entered until the amount of damages has been ascertained." *Top Rank, Inc. v. Fey*, No. 08-cv-00480-RPM, 2009 WL 1384171, at *3 (D. Colo. May 15, 2009). "While the Court accepts the well-pleaded facts of the complaint as true on a motion for default judgment, allegations relating to the amount of damages are generally not accepted as true." *First Home Bank*, 2018 WL 6990394, at *3; *see also United States v. Craighead*, 176 Fed. App'x. 922, 925 (10th Cir. 2006) (unpublished). "In making an independent determination of the amount of damages, the court may rely on detailed affidavits or documentary evidence." *BMO Harris Bank N.A. v. Marjanovic*, No. 19-cv-02945-CMA-KMT, 2021 WL 307501, at *4 (D. Colo. Jan. 29, 2021) (citations and quotation omitted). "If defendant does not contest the amount prayed for in the complaint by failing to answer and the claim is for a sum certain or a sum that can be made certain by computation, the judgment generally will be entered for that amount without any further hearing." *Magic Carpet Ski Lifts, Inc. v. S&A Co., Ltd*, No. 14-cv-02133-REB-KLM, 2015 WL 4237950, at *6 (D. Colo. June 8, 2015), *report and recommendation adopted,* 2015 WL 4162586 (D. Colo. July 9, 2015); *Flaks v. Koegel,* 504 F.2d 702, 707 (2d Cir.

1974) ("While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.")).  However, "a court may enter a default judgment without a hearing only if the amount claimed is a liquidated sum or one capable of mathematical calculation."  *Hunt v. Inter–Globe Energy, Inc.*, 770 F.2d 145, 148 (10th Cir. 1985).  Rule 55 provides that a court "may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter."  Fed. R. Civ. P. 55(b)(2).

The only support PMW provides for its claimed damages is the single allegation in the verified complaint that PMW is entitled to $165,566.37.  Docket 8 at 3, ¶ 14.  A court may treat a verified complaint as an affidavit and consider allegations in a verified complaint, along with other competent evidence, in determining whether a damages award is capable of mathematical calculation.  *Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1163 (10th Cir. 2021) (citation omitted) (a "verified complaint may be treated as an affidavit for purposes of summary judgment"); *BMO Harris Bank N.A.*, 2021 WL 307501, at *4 (considering verified complaint and attached affidavit to determine damages on a motion for default judgment).  However, allegations in a certified complaint are not dispositive of the issue.  *See Jarare, LLC v. Darling*, No. 09-cv-01337-REB-CBS, 2010 WL 1435560, at *1 (D. Colo. Apr. 9, 2010); 46 Am. Jur. 2d Judgments § 260 (updated May 2024) ("A claim is not for a sum certain, and therefore subject to a default judgment, merely because the claim is stated as a specific dollar amount in a complaint, verified complaint, or affidavit.").  Here, the Court finds that the complaint

fails to establish PMW's damages.  The complaint provides no proof of what, if anything, ANKC has paid to PMW, and, therefore, the Court is unable to calculate what PMW is owed under the terms of the note and the loan agreement.

For substantially similar reasons, the Court finds that PMW has not established the relief it is entitled to under the terms of the security agreement.  PMW has identified no specific collateral that it believes it is entitled to possess.  The security agreement defines collateral as:

> (a) all fixtures and personal property of every kind and nature including all accounts (including health-care-insurance receivables), goods (including inventory and equipment), documents (including, if applicable, electronic documents), instruments, promissory notes, chattel paper (whether tangible or electronic), letters of credit, letter-of credit rights (whether or not the letter of credit is evidenced by a writing), securities and all other investment property, general intangibles (including all payment intangibles), intellectual property, money, deposit accounts, and any other contract rights or rights to the payment of money; and (b) all Proceeds and products of each of the foregoing, all books and records relating to the foregoing, all supporting obligations related thereto, and all accessions to, substitutions and replacements for, and rents, profits and products of, each of the foregoing, and any and all Proceeds of any insurance, indemnity, warranty or guaranty payable to the Grantor from time to time with respect to any of the foregoing.

Docket No. 8 at 5, ¶ 28.  The Court entered a preliminary order of possession adopting the terms of the security agreement, Docket No. 31, and ANKC has presumably provided PMW with all the collateral matching this description.  However, the Court declines PMW's request to make the preliminary order of the Court a final judgment without further evidence of what the Court is ordering to be transferred from ANKC to PMW.

PMW has failed to establish the amount of damages it is owed under the note and loan agreement, to identify specific collateral it seeks to possess under the security agreement, and to adequately allege that Mr. Milks and Mr. Ward breached their

guaranties.  Until plaintiff files motions that better support its damage calculation and explain the collateral transfers it seeks to enforce, the Court will not determine whether a hearing is necessary.  Rather, the Court will deny PMW's motions for default judgment without prejudice.

## IV.  CONCLUSION

It is therefore

**ORDERED** that the Motion for Default Judgment Against Defendant ANKC San Fransisco LLC [Docket No. 45] is **DENIED without prejudice**.  It is further

**ORDERED** that the Motion for Default Judgment Against Defendant Andrew Milks [Docket No. 46] is **DENIED without prejudice**.  It is further

**ORDERED** that the Motion for Default Judgment Against Defendant Sean Ward [Docket No. 47] is **DENIED without prejudice**.  It is further

**ORDERED** that the Motion for Hearing [Docket No. 48] is **DENIED**.

DATED September 23, 2024.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge